Esther SMITH

v.

**Donna E. SHALALA, Secretary of Health and Human Services.**

**No. 93 CV 1522.**

United States District Court, E.D. New York.

Feb. 17, 1994.

Cherie H. Howard, Bedford Stuyvesant Legal Services Corp., Brooklyn, NY, for plaintiff.

Elliot M. Schachner, Asst. U.S. Atty., Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action under 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health and Human Services (the "Secretary") that denied plaintiff's applications for Supplemental Security Income disability benefits under Title XVI of the Social Security Act, § 1381 *et seq.* (the "Act"), and Disability Insurance benefits under Title II of the Act. The Secretary has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff has cross-moved for the same relief or, in the alternative, for a remand to the Administrative Law Judge ("ALJ") to supplement the record. Plaintiff also seeks attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. For the reasons stated below, the Secretary's motion is granted and the claimant's cross-motions are denied.

## FACTS

Plaintiff Esther Smith ("Smith") is a 62 year old woman with a high school education. Record ("Rec.") at 27, 42. From 1957 to on or about February 25, 1990, plaintiff worked as a presser for a drapery company ironing draperies. Rec. at 28–29.[1] This job required her to stand "all the time," fold draperies, and lift an iron of approximately two to three pounds. Rec. at 28. Plaintiff did not leave her place of employment because of an accident or medical problems; she was laid off because there was no more work and she has not worked since. Rec at 29. On March 6, 1991, plaintiff filed concurrent applications for Supplemental Security Income disability benefits and Disability Insurance benefits. Plaintiff stated in her application that she "became unable to work because of [her] disabling condition on February 26, 1990." Rec. at 42. Plaintiff claims disability because

of rheumatoid arthritis, hypertension, arthritis, high blood pressure, chronic obstructive pulmonary disease ("COPD"), and pain.

Plaintiff's claims were denied at both the initial level, Rec. at 54–57, and at the reconsideration level, Rec. at 69–72. Plaintiff had first claimed that she was disabled because of arthritis and high blood pressure, but at the initial level the Secretary stated that "medical evidence shows that you have had normal blood pressure and normal examination findings." Rec. at 57. In denying her request for reconsideration, the Secretary stated that "[t]he medical evidence shows that you have had pain, but you are able to move about freely. Based on your description of your job as a presser, your condition does not prevent you from performing this work." Rec. at 72. Plaintiff therefore filed a request for a hearing before an Administrative Law Judge on October 16, 1991. Rec. at 87–90.[2] The hearing was held on January 22, 1992, where plaintiff was represented by a paralegal from the Bedford–Stuyvesant Community Legal Services Corporation. Rec. at 23–41. On June 17, 1992, the ALJ concluded that plaintiff has a residual functional capacity ("RFC") to perform her past work as a presser and is not disabled under the relevant Social Security regulations. Rec. at 19.

This denial constituted the final decision of the Secretary when the Appeals Council denied plaintiff's request for review. Rec. at 4–6. In her request for a review of the ALJ's decision, Smith submitted a report dated September 1, 1992, from a Registered Physician's Assistant at the Stuyvesant Heights Medical Group. Supplemental Record at 1–6. The Appeals Council, however, concluded that the report "offers no new medical findings over what has previously been reported by this treating source and which is contained in the record that was before the

---

1. There is some discrepancy in the record regarding the date of plaintiff's termination with her former employer. She testified that she stopped working on or about February 25, 1990, Rec. at 28–29, but in her application for disability benefits she stated that she worked as a presser from 1957 to 1989. Rec. at 98.

2. In her request for a hearing plaintiff stated that,

I am sick. I suffer with arthritis. My feet swollons [sic] when I stand. Then sometime[s] my blood pressure go[es] up. My head hurts. When I worry about things. I can't find no job. I am 60 years of age. Nobody want to hire me. My family can't help me. Please help me in Jesus's name.

Rec. at 87.

[ALJ]." Rec. at 4. Smith thereafter filed the instant appeal with this court.

Smith argues that the ALJ's decision should be overturned because (i) the ALJ erred by not properly evaluating her allegations of disabling pain; (ii) the evidence does not support the ALJ's determination that Smith is capable of performing her past work as a presser or other light work; and (iii) the ALJ erred in not giving more weight to Smith's treating source. In the alternative, plaintiff requests a remand because, among other things, the ALJ erred in failing to determine the onset date of Smith's disability. Pl.'s Mem. at 10–26. Plaintiff is also seeking an award of attorneys's fees. The Secretary, on the other hand, contends that the ALJ's denial of benefits should not be overturned because it was based on substantial evidence.

## I. *Scope of Review*

A claimant is entitled to benefits only if he or she has a "disability," which is defined under the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). "Physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C). That impairment must be of such severity that the claimant,

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for such work.

42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

Pursuant to the sequential evaluation process established by the Social Security regulations, if a claimant's impairments are not listed in the "Listing of Impairments" contained in the Appendix of the regulations, the Secretary must assess the claimant's "residual functional capacity" ("RFC"); that is, the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to engage in his prior work, benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ determined that plaintiff has the RFC to perform her past work as a presser. Rec. at 19 ("The claimant's impairments do no prevent the claimant from performing her past relevant work."). The ALJ also noted that plaintiff has the RFC to perform other light work. Rec. at 18 ("She retains the residual functional capacity for light work unassociated with dust and fumes.").

The Secretary's findings are conclusive if supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "It is more than a mere scintilla or a touch of proof here and there in the record." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988). "The substantial evidence test, moreover, applies not only to the Secretary's findings of fact, but also to the inferences and conclusions of law to be drawn from such facts." *Marchand v. Sullivan*, No. 90 Civ. 676, 1991 WL 183355 at *2 (S.D.N.Y. Sept. 11, 1991) (citing *Rodriguez v. Califano*, 431 F.Supp. 421, 423 (S.D.N.Y.1977)). "[T]he Court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991). "If the Court finds that there is substantial evidence supporting the Secretary's determination, the Court must uphold the Secretary's decision, even if there is also substantial evidence in support of the plaintiff's position." *Greene v. Sullivan*, No. 90 Civ. 8181, 1992 WL 176661 at *3 (S.D.N.Y.

July 16, 1992) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982)).

II. *The Medical Evidence*

A. *Arthritis*

■ In a consultative examination dated May 7, 1991, Dr. Mehta wrote that plaintiff,

Walks with a normal gait. Able to stand on toes and on heels. Able to squat ¾ of the way. Able to get dressed and undressed without difficulty. Able to get on and off the examination table without difficulty and does not use any devices to ambulate.

Rec. at 135. Dr. Mehta also noted that there is "[n]o paracervical tenderness" in the joints and cervical area. Rec. at 135. He stated that "[a]ll the movements are normal." Rec. at 135. Furthermore, he observed that there is no swelling or deformity in the shoulders, elbows, wrists, hands, hips, knees, and ankles. Rec. at 136. Plaintiff, he noted, is "[a]ble to make a fist of 100 percent" and "[f]ine and gross movements are present and grip is normal." Rec. at 136. Dr. Mehta also noted that the "x-ray of the right hand [is] essentially negative." Rec. at 136. Dr. Mehta's impressions were as follows:

1. Pain both hands *with no objective findings.*

2. Pain both knees *with no objective findings.*

3. Pain both ankles *with no objective findings.*

Rec. at 136 (emphasis added).

In the Brooklyn Hospital Center's Radiology Report, dated May 8, 1991, the impression is a "[n]ormal right hand." Rec. at 137. The report also states that "[m]ultiple views of the right hand show no evidence of fracture or dislocation. The architecture of the regional bones is normal. No periosteal reaction is noted. There are no arthritic changes. The regional soft parts are unremarkable." Rec. at 137.

In another consultative examination, dated September 5, 1991, Dr. Schwartzman noted that plaintiff was "in no acute distress." Rec. at 139. Dr. Schwartzman also concluded that, "[t]here was a full range of motion of all joints and cervical spine." Rec. at 140. In Dr. Schwartzman's impressions he wrote that there was "[m]ultiple joint pains *without significant functional limitations.*" (emphasis added). Dr. Schwartzman recommended that the plaintiff "follow up with her usual medical attendant." Rec. at 140. As the ALJ noted, "[t]he musculoskeletal and neurological examinations were negative for any pathology." Rec. at 15.

However, in a report dated March 4, 1991, Dr. Kevin P. Feig concluded that plaintiff is "permanently unemployable," because of, among other things, "arthritis." Rec. at 117. In this same report Dr. Feig concludes that plaintiff is suffering from "chronic rheumatoid arthritis." Rec. at 115. Dr. Feig, however, does not attach any objective clinical data supporting this conclusion. Because there is no clinical data supporting this conclusion, and because there is evidence from other sources contradicting this conclusion (namely, Drs. Schwartzman and Mehta), Dr. Feig's finding is not controlling.

■ In a report from the Stuyvesant Heights Medical Group, dated March 6, 1991, a Registered Physician's Assistant, Mr. Jean M. Millien, concluded that plaintiff suffered from, among other things "rheumatoid arthritis." Rec. at 125. Another Registered Physician's Assistant, Mr. Bernath Berkowitz, also concluded that plaintiff suffers from "chronic arthritis" in a report dated August 8, 1991, Rec. at 132, and from "rheumatoid arthritis" in a report dated January 3, 1992, Rec. at 147. However, as Registered Physician's Assistants, Messrs. Millien and Berkowitz are not licensed physicians, osteopaths or psychologists and are therefore not "acceptable medical sources," as that term is defined in 20 C.F.R. § 416.913(a); hence their opinions should be accorded less weight than that of Drs. Mehta and Schwartzman. But of greater importance, neither assistant found that plaintiff is *disabled* as a result of the arthritic condition. As the ALJ properly noted, "[p]hysical examinations throughout revealed the claimant to have *full range* of motion of all major joints except her knees." Rec. at 15 (emphasis added). *See, e.g.,* Rec. at 129 (in the March 6, 1991 report, it is reported that plaintiff has no limitations in

lifting, carrying, standing, walking, sitting, pushing or pulling); Rec. at 134 (in the August 8, 1991 report it is reported that plaintiff is restricted to sitting up to 8 hours per day, standing or walking up to 2 hours per day, and lifting .10 pounds occasionally).[3] Moreover, at the end of the March 6, 1991 report, Dr. Marc Reynolds Alerte states that plaintiff "may return to work/school on [March 1, 1991]." Rec. at 130.[4]

The ALJ did not reject plaintiff's contention that she suffered from arthritis. He concluded, however, that "[t]he medical evidence establishes that the claimant has ... rheumatoid arthritis with complaints of joint pain *but without any documented musculoskeletal neurological deficits[.]* " Rec. at 18–19 (emphasis added). As the discussion above demonstrates, this conclusion is supported by substantial evidence.

### B. *Hypertension*

■ The ALJ concluded that Smith "has complaints of hypertension without any elevated blood pressure readings and no significant end-organ damage[.]" Rec. at 18–19. The record supports the ALJ's determination that Smith does not suffer from debilitating hypertension. Hypertension is defined as "[a]bnormally high blood pressure (the pressure of blood in the main arteries) [and] is usually defined as a resting blood pressure greater than [140/90]." *The American Medical Association Encyclopedia of Medicine* 557 (1989). "However, an elderly person normally has blood pressure readings above these values because blood pressure increases with age." *Id.* Smith's blood pressure readings were 150/90 on March 6, 1991 (Rec. at 126); 130/70 on March 4, 1991 (Rec. at 119)[5]; 114/76 in her left arm and 124/70 in her right arm on April 19, 1991 (Rec. at 188); 142/70 on July 12, 1991 (Rec. at 110); 148/80

on September 6, 1991 (Rec. at 112). As the medical text cited above demonstrates, these readings are not abnormally high, especially for a person of plaintiff's age, and hence they do not establish hypertension.

Dr. Feig, on the other hand, opined that Smith was permanently unemployable because of, among other things, hypertension. Rec. at 117. However, as noted above, there is no clinical data supporting this conclusion and it is inconsistent with the other medical evidence cited above. Furthermore, Dr. Feig's report is internally inconsistent because on the one hand he concludes that Smith is suffering from debilitating hypertension, while on the other hand he records her blood pressure at either 130/70 or 140/80, Rec. at 119, which, as noted above, is within normal limits for an elderly person.[6] The ALJ's conclusion that plaintiff does not suffer from debilitating hypertension is also supported by plaintiff's representative at the hearing who stated that "[plaintiff] has hypertension, which is controlled at this point[.]" Rec. at 27.

### C. *Chronic Obstructive Pulmonary Disease*

■ The ALJ determined that Smith does suffer from COPD but that it is "controlled with medication and requir[es] no emergency room treatment[.]" Rec. at 19. Thus the condition, he reasoned, is not debilitating. The medical evidence also supports this conclusion. For example, Dr. Schwartzman noted on September 5, 1991, the following: "[c]hest symmetrical with good air entry. Lungs are clear with no rales, rhonchi or wheezes noted." Rec. at 140. Dr. Schwartzman also stated that "[p]hysical examination shows no signs of ... COPD." Rec. at 140. The radiology report from The Brooklyn Hospital, dated September 9, 1991, also

---

3. No objective clinical data is attached to the August 8, 1991 report. The January 3, 1992 report states that plaintiff is restricted to, among other things, sitting, standing and walking continuously for 1 hour in a workplace setting. Rec. at 149. Again, no data is attached to this report.

4. On or about October 12, 1991, Dr. Alerte stated that plaintiff suffers from "chronic rheumatoid arthritis [and] should reside on 1st floor if no elevator is available in building." Rec. at 185.

5. This report also states that Smith's blood pressure was 140/80.

6. A report from the Stuyvesant Heights Medical Group also concluded that Smith suffers from borderline hypertension. Rec. at 130 (conclusion of Dr. Alerte). However, this report also states that plaintiff "may return to work" as of March 1, 1991. Rec. at 130.

showed that "[l]ung fields are clear." Rec. at 141. The report's impression was "no active lung disease." Rec. at 141. Records from the Woodhull Medical Mental Health Center also indicate that plaintiff's lungs were clear. Rec. at 111. Dr. Feig, who opined that plaintiff was permanently unemployable, also noted that plaintiff's lungs were clear. Rec. at 119. Dr. Alerte concluded that plaintiff suffers from COPD but also does not state that it is disabling; his report only states that she should be living on the first floor if there is no elevator in her building. Rec. at 185.[7]

In sum, the ALJ's conclusion that plaintiff does not suffer from debilitating COPD is supported by the evidence. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(A) ("Impairments caused by the chronic disorder of the respiratory system generally result from irreversible loss of pulmonary functional capacity (ventilatory impairment, gas exchange impairment, or a combination of both).").[8]

### D. *Subjective Complaints of Pain*

■ Smith testified at her hearing that she suffers from pain which renders her disabled for purposes of receiving benefits. For example, she stated that she suffers from "[a] little sharp pain in the chest" caused by the COPD which she experiences "once in a while" and which does not radiate. Rec. at 32. In her application for reconsideration she wrote that her "legs stay[ ] swollen [and] painful." Rec. at 102. She also testified that she suffers from pain "too often to keep on doing work [as a presser] regularly." Rec. at 35. She further testified that she suffers from headaches "once in a while," Rec. at 34, and that she suffers from shortness of breath when she has to walk up stairs, Rec. at 102. She also wrote in her application for reconsideration that "[w]ith shortness of breath and pains in my feet and legs, I can hardly take care of my personal needs." Rec. at

104. Plaintiff also testified that because of her condition she is unable to stand for long periods (Rec. at 29), can only walk for two blocks and cannot sit comfortably for more than thirty minutes (Rec. at 30), and she is unable to bend and kneel.(Rec. at 35).

■ Section 423(d)(5)(A) of Title 42 of the United States Code provides the relevant criteria which an ALJ must consider when evaluating a claimant's assertion that pain renders her disabled:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, *when considered with all evidence required to be furnished under this paragraph* (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), *would lead to a conclusion that the individual is under a disability.*

42 U.S.C. § 423(d)(5)(A) (emphasis added). Therefore, in evaluating the impact of the claimant's subjective complaints of disabling pain, the ALJ is directed to consider both the claimant's statements of pain and all other evidence produced at the hearing.

■ The Second Circuit has had occasion to comment on the ways in which an ALJ must proceed in determining whether a claimant is disabled because of pain. In this regard, an ALJ's determination of claimant's credibility and his examination of the entire record as a whole, is crucial. For example,

---

**7.** *In a report dated September 1, 1992, Mr. Millien also concluded that plaintiff suffers from COPD and specifically that she exhibited "bilateral wheezing with resonance related to the COPD." Supplemental Transcript at 2. This, however, is not inconsistent with the ALJ's determination that she does not suffer from debilitating COPD.*

**8.** Although the regulations state that "[t]he respiratory system (3.00) will no longer be effective on June 7, 1993," 20 C.F.R. Pt. 404, Subpt. P, App. 1, this regulation was in effect at the time of the ALJ's denial of benefits.

in *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979), the Second Circuit explained that,

> [I]f the ALJ—after weighing the objective medical evidence in the record, appellant's demeanor, and other indicia of credibility—had decided to discredit appellant's claims of severe, disabling pain, then the decision would be supported by substantial evidence and we would affirm.

As the court in *Marcus* explained, a reversal of an ALJ's determination that the claimant is not disabled because of pain is only appropriate where the ALJ makes no finding of credibility:

> If, on the other hand, the ALJ in fact did not consider the credibility of appellant's claims of disabling pain, but instead rejected her claims on the ground that objective, clinical findings did not establish a cause for such intense pain, then in our view the Secretary's decision was premised on an erroneous legal standard, and we must reverse.

*Id.* at 27.

Applying these criteria to this case, it cannot be said that the ALJ rejected Smith's claims of disabling pain on the sole ground that there was no objective, clinical findings establishing a cause for such pain. Rather, in accordance with 42 U.S.C. § 423(d)(5)(A), the ALJ considered "all evidence required to be furnished," including the reports of Drs. Schwartzman and Mehta, reports from the Stuyvesant Heights Medical Group, and plaintiff's testimony at the hearing. Specifically, the ALJ determined that plaintiff does not suffer from debilitating pain because, among other things, (i) "she has not required any regular medical treatment for any advanced complications resulting from her impairments," Rec. at 17; (ii) plaintiff "goes about performing a full range of household chores which consist of cooking, cleaning and shopping," Rec. at 17; and (iii) "the record does not show that the claimant is taking any pain medication of sufficient severity to alter mental alertness or otherwise produce side effect," Rec. at 17–18. Based on his review of this evidence, the ALJ stated as follows:

> Therefore, the [ALJ] must conclude within the guidelines of Social Security Ruling 88–13, that neither medical evidence of

record nor other findings *relating to credibility* support the claimant's allegations that she is totally incapacitated.

Rec. at 18 (emphasis added).

Plaintiff argues that "[b]eyond the curious reference to 'nor other findings relating to' credibility ... the ALJ made no specific findings regarding plaintiff's credibility." Pl.'s Mem. at 13. This is not a fair and reasonable reading of the record; by making reference to Social Security Ruling 88–13, and by specifically making reference to the issue of credibility, the ALJ did in fact make a determination that Smith's allegations of disabling pain are not credible when weighed against the other evidence in the record. Furthermore, irrespective of plaintiff's contention that there is "persuasive proof of plaintiff's disabling pain," Pl.'s Mem. at 12, the ALJ's determination does find support in the record. For example, Dr. Mehta stated that plaintiff suffered from pain in her hands, knees and ankles, but *"with no objective findings."* Rec. at 136 (emphasis added). Dr. Schwartzman noted that Smith suffers from multiple joint pain, but *"without significant functional limitations."* Rec. at 140 (emphasis added). Plaintiff stresses that there are entries throughout the record regarding her complaints of pain but some of these very entries also support the ALJ's determination that plaintiff's pain is not debilitating. *E.g.,* Rec. at 188 ("[patient] [complains of] pain in knee, *sometimes,* when she either stands or lies down.") (emphasis added); Rec. at 193 ("side chest pain *'just once in a while* [.]' A little stabbing pain *'very rarely'* when doing light house work. Takes no pain [medications]. Pain *'lasts about a second.'* ") (emphasis added).

Plaintiff, however, urges reversal based, in part, on the fact that the record contains references to her edema, demineralization and degenerative changes in her right hand, and evidence of arthritis. These conditions, she argues, are "medical signs and findings," 42 U.S.C. § 423(d)(5)(A), upon which it can be concluded that plaintiff suffers from disabling pain. *See* Pl.'s Mem. at 12–13. However, the ALJ considered the reports in which these conditions were noted, Rec. at

15, and therefore he did in fact consider the objective medical evidence before reaching his conclusion that plaintiff's complaints of pain were not credible. In this regard, the ALJ's observations that plaintiff participates in a number of daily activities (e.g., cooking, going to church, attending Bible classes, walking the five or six blocks to church or taking the bus, Rec. at 33–34), and that she reported to Dr. Schwartzman that Tylenol relieves the musculoskeletal pain, Rec. at 139, is further objective support for the ALJ's determination that plaintiff does not suffer from debilitating pain. The cases relied on by plaintiff, therefore, are inapposite. E.g., Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir.1983) (ALJ's determination that claimant's complaints of disabling pain was not credible was erroneous where ALJ "placed principal, if not sole, reliance upon his observations at the hearing.").

### III. Plaintiff's Residual Functional Capacity

■ Plaintiff argues that the ALJ's decision should be reversed because he erred in concluding that plaintiff retains the RFC to perform either her past work as a presser or other light work. In the alternative, plaintiff urges that the matter be remanded so that the ALJ can further investigate, among other things, the requirements of plaintiff's past work as a presser. Pl.'s Mem. at 15–18.[9]

At the hearing plaintiff testified that being a presser involved using a "hand iron on a long tape." Rec. at 27. She testified that the hand iron weighed approximately two or three pounds, Rec. at 28; that she had to stand "all the time," Rec. at 28; that she had to lift and carry the drapes but that she was assisted by the men, Rec. at 28. Plaintiff was represented by a paralegal who had the opportunity to make further inquiries into the nature of plaintiff's former job. Plaintiff's representative reported to the ALJ that plaintiff's former work was unskilled. Rec. at 30. Plaintiff also testified that she learned to do the pressing while on the job. Rec. at 35.

As demonstrated above, the medical evidence supports the ALJ's determination that plaintiff is capable of performing her past work as a presser. This evidence includes, among other things, Dr. Schwartzman's impression that plaintiff suffers from "[m]ultiple joint pains without significant functional limitations," Rec. at 140; Dr. Mehta's determination that there is "no objective findings" for plaintiff's pain in hands, knees and ankles, Rec. at 136; and plaintiff's testimony as to her ability to perform daily functions such as cooking and shopping, Rec. at 37.[10] This conclusion also finds support in the functional limitations recorded by her treating sources at the Stuyvesant Heights Medical Group, which included findings that claimant suffered no functional limitations whatsoever, Rec. at 129 (March 6, 1991) and Rec. 130 (Dr. Alerte's conclusion that plaintiff "may return to work/school on [March 1, 1991]."), as well as a finding that claimant can in a workplace setting sit continuously for 1 hour, stand continuously for 1 hour, walk continuously for 1 hour, and during an entire 8–hour workday can sit a total of 4 hours, stand a total of 4 hours and walk a total of 2 hours, and lift and carry up to 20 pounds occasional-

9. Plaintiff also makes the argument that the matter should be remanded so that the ALJ can determine (i) the onset date of plaintiff's disability; and (ii) whether the physician-in-charge approved the reports completed by the physician's assistants at the Stuyvesant Heights Medical Group. Neither of these issues are grounds for a remand. First, plaintiff testified that she stopped working for nonmedical reasons on or about February 25, 1990, and in her application for benefits, in answer to the question "When did your condition finally make you stop working?", plaintiff answered February 26, 1990. Second, even if it is determined that a licensed physician approved Messrs. Millien and Berkowitz's reports, there is substantial evidence, as demonstrated above, supporting the ALJ's determination that plaintiff's impairments do not render her disabled for purposes of the Act, and hence it is likely that this information would not affect the ALJ's determination.

10. Plaintiff also wrote in her application for benefits that she cooks every day, but only for two meals; that she cleans every other day, for approximately one half hour to an hour and that she goes shopping every day for approximately one hour, walks every day for approximately 45 minutes and visits with friends every day for a few hours. Rec. at 97.

ly. Rec. at 149 (January 3, 1992).[11] Because the functional limitations opined throughout the record vary dramatically, it cannot be said that the ALJ did not have substantial evidence upon which to base his conclusion that plaintiff had the RFC to perform her past work as a presser.

Plaintiff also argues that because the ALJ did not inquire into the number of hours she worked each day, the length of time she stood for any one period, or the distance she would be required to walk in commuting to work, *Donato v. Secretary of Dept. of Health and Human Services,* 721 F.2d 414, 419 (2d Cir.1983), the action must be remanded for further investigation. However, irrespective of whether plaintiff has the RFC to return to work as a presser, the ALJ specifically found, in the alternative, that she also has the RFC to perform light work. "Despite her allegations that she is markedly restricted, the actual documentary evidence of record shows participation in activities consistent with a residual functional capacity for light work." Rec. at 18. "She retains the residual functional capacity for light work unassociated with dust and fumes." Rec. at 18. The regulations state that "light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). "To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do *substantially* all of these activities [*i.e.,* walking, standing, sitting with some pushing and pulling of arm or leg controls]." 20 C.F.R. § 416.967(b) (emphasis added). As the medical evidence outlined above demonstrates, there was substantial evidence upon which

the ALJ could determine that plaintiff had the RFC for light work.[12]

IV. *The Treating Physician Rule*

■ Plaintiff also argues that the ALJ's decision was erroneous because he did not give proper weight to the reports and opinions from plaintiff's treating source, the Stuyvesant Heights Medical Group. Pl.'s Mem. at 18–23.

The Secretary's regulation regarding the weight to be accorded a treating source's opinion reads in relevant part as follows:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record,* we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2) (emphasis added). This regulation was approved by the Second Circuit in *Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993), despite differences between the regulation and a version of the "treating physician rule" previously followed by the Second Circuit.

In this case, the ALJ did gave proper weight to the opinions of plaintiff's treating source. First, except for (arguably) the September 1, 1992 opinion of Mr. Millien, Supplemental Transcript, and the opinion of Dr. Feig, none of plaintiff's treating sources opined that plaintiff is disabled. Therefore, even if the ALJ had given them more weight it is far from certain that he would have been compelled to find plaintiff disabled. Second, as demonstrated above, there is substantial evidence in the record which contradicts these opinions; namely, the objective clinical

---

**11.** In a report dated September 1, 1992, Mr. Millien, opines that plaintiff is in "deteriorating health," and can only stand in an eight hour work day for a total of one hour. *See* Supplemental Record. This report is inconsistent with the reports of Drs. Schwartzman and Mehta and does not reference any clinical data. As the Appeals Council correctly noted, the report "offers no new medical findings over what has previously been reported by this treating source and which is contained in the record that was before the [ALJ]. The medical assessment indicates greater limitations, and hence, a worsening of your medical conditions, although the findings in

the report do not support or indicate any worsening of your medical condition." Rec. at 4. Furthermore, there is no indication in this report that it relates to plaintiff's condition prior to June 17, 1992, the date of the ALJ's decision.

**12.** Because there is substantial evidencing supporting the ALJ's decision, plaintiff is not the prevailing party in this action and hence her cross-motion for attorney's fees pursuant to the Equal Access to Justice Act must be denied. 28 U.S.C. § 2412(d)(1)(A).

findings and impressions of Drs. Schwartz-man and Mehta. Even Dr. Alerte from the Stuyvesant Heights Medical Group stated that plaintiff could return to work on March 1, 1991. Further, because Messrs. Millien and Berkowitz are registered physician's assistants, and not licensed physicians, osteopaths or psychologists, they are not acceptable medical sources, 20 C.F.R. § 416.913(a), and hence their opinions should be accorded less weight.

## CONCLUSION

For the foregoing reasons, the Secretary's motion is granted and the plaintiff's cross-motions are denied.