Mounir ELIAS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. 97 CV 6947.

United States District Court,
E.D. New York.

June 30, 1999.

Michael T. Sullivan, Kings Park, NY, for plaintiff.

Zachary W. Carter, United States Attorney, E.D.N.Y., Brooklyn, NY by David L. Goldberg, Assistant United States Attorney, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Mounir Elias ("Elias" or the "plaintiff"), commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final administrative determination of the Commissioner of the Social Security Administration (the "Commissioner" or the defendant) denying his application for social security disability insurance benefits. Presently before the Court is the defendant's motion for judgment on the pleadings as well as the plaintiff's cross-motion for similar relief, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ("Fed.R.Civ. P."). The issues for the Court to resolve are: (1) whether the Commissioner's denial of disability benefits was supported by substantial evidence; (2) whether Administrative Law Judge Daniel J. Slattery (the "ALJ") erred by not requesting the presence of a vocational expert to determine whether the plaintiff could perform light work; and (3) whether the plaintiff received a fair hearing in that he appeared before the ALJ without the benefit of counsel.

## I. BACKGROUND

### A. Procedural History

Elias first filed an application for social security disability benefits on January 11, 1995. His application was denied initially on March 14, 1995, and on reconsideration on August 28, 1995. Elias then filed a timely request for a hearing, which was held on June 12, 1996. On July 23, 1996,

after examining the relevant medical history and Elias' educational background, the ALJ held that Elias was not entitled to disability benefits. Specifically, the ALJ held that although the claimant was severely impaired by cervical and lumbar myofascial syndromes and had established his inability to perform his past relevant work, he retained a residual functional capacity compatible with the performance of light work. Furthermore, the ALJ cited Rule 202.14 of Table No. 2, Appendix 2, Subpart P, Part 404 of the Regulations, which mandates a finding of "not disabled" for a high school graduate who is closely approaching advanced age, despite a lack of transferable work skills. After an appeal, on October 9, 1997, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Elias' request for review. This Federal Court proceeding followed.

B. *Factual Background*

Elias, who is presently 56 years of age, alleges that he has been disabled since December 31, 1993 due to severe neck and back injuries. Elias is a high school graduate and completed three years of schooling at Staten Island College, where he studied mechanics and engineering. Elias has worked as a cab driver for most of his adult life. From 1979 through December 1993, Elias worked for a cab company, where he performed clerical work, and drove, maintained, and repaired the cabs. On March 3, 1992, Elias was injured in an auto accident. Elias claims that on December 31, 1993, the injuries caused by the auto accident forced him to stop working.

After the auto accident on March 3, 1992, Elias went to South Shore Hospital for treatment on March 7, 1992. X-rays of his cervical and lumbosacral spines were negative. The hospital diagnosis was cervical and lumbosacral spine spasm. Elias then received follow up care from Dr. Joyce Goldenberg, a physician, on March 10, 1992. A musculoskeletal exam revealed moderate tenderness and restricted motion of his neck and back. Dr. Goldenberg made a diagnosis of a whiplash syndrome, cervical and lumbosacral myositis, and a low back sprain. The treatment consisted of physical therapy and pain medication. Dr. Goldenberg did not recommend that Elias undergo surgery.

On April 29, 1992, Dr. James Dana, a physiatrist, examined Elias. Dr. Dana opined that Elias suffered from a cervical sprain, right cervical derangement, and left sacroiliac joint sprain. Dr. Dana ruled out a sprain of the cervical and lumbosacral spine. He recommended physical therapy to the cervical spine and additional testing.

From 1992 to 1995, Dr. Jacob Lehman, an orthopedist, examined and treated Elias on numerous occasions. On June 2, 1992, Dr. Lehman reported that Elias had tenderness and muscle spasm over the neck and back, and that his right bicep and right ankle reflexes were diminished at that time. Dr. Lehman was of the opinion that Elias was totally disabled. He prescribed physical therapy and Vicodin, a pain medication. Subsequent examinations over the three year period indicated that while Elias continuously had severe neck and back pain, his condition occasionally improved due to the chiropractic treatment and Vicodin medication. On February 24, 1994, Dr. Lehman reported that he found disc damage in Elias' neck and lower back. However, he did not conclude that Elias required surgery. In addition, in reports prepared on different dates, Dr. Lehman stated that Elias was either partially or totally disabled. Significantly, however, Dr. Lehman's findings were in the context of reports to the Workers' Compensation Board, which simply asked the treating physician whether the patient is partially or totally disabled.

Dr. Jennifer Choi, a pain management specialist, examined Elias on June 29, 1994. She indicated that heat and ice application temporarily alleviated Elias' condition. She noted that Elias did not have a problem sleeping. His most comfortable

position was standing, while his most uncomfortable position was sitting. At the time of the examination, Elias was taking Vicodin medication. Dr. Choi also noted that while Elias was depressed, he was alert and oriented. Also, significantly, he had full range of motion of his cervical spine and his range of motion of his extremities and muscle strength were grossly normal. However, the range of motion of his lumbar spine was restricted. Elias also experienced decreased sensation in his left extremities. His deep tendon reflexes were normal and equal. Dr. Choi made a diagnosis of myofascial pain syndrome associated with degenerative disc disease of the lower spine due to injury. She recommended acupuncture to decrease Elias' pain.

On January 11, 1995, Elias applied for Social Security Disability benefits. On February 11, 1995, Dr. Choi prepared a report at the request of the Office of Disability Determination. In her report, Dr. Choi indicated that she first examined Elias on June 29, 1994, and thereafter saw him three times a week, although the frequency of visits had been reduced to once every two weeks at the time of the report. Dr. Choi's findings included decreased sensation of the left extremities, normal and equal deep tendon reflexes, no atrophy, no motor deficit, and positive straight leg raising on the left at eighty degrees at rest. Dr. Choi noted that Elias did not have significant abnormality in gait, and did not require an assistive device to walk.

In the opinion of Dr. Choi, Elias could not continue to work as a cab driver, but importantly, she concluded that Elias could perform light work. Dr. Choi specified that Elias could lift and carry a maximum of twenty pounds, and stand and/or walk, as well as sit, up to six hours a day.

On February 23, 1995, at the request of the Administration, Dr. S. Dutta, a surgeon, conducted a consultative examination. After physically examining Elias, Dr. Dutta made a diagnosis of a herniated disc at the L4–5 level with left lumbar radiculopathy. Significantly, Dr. Dutta also concluded that Elias was able to perform limited desk work on a part time basis.

## C. The Hearing

Elias appeared *pro se* before the ALJ on June 12, 1996. At the time of the hearing, Elias was solely under the care of a chiropractor and was taking Vicodin medication. Elias testified that he lived with his wife. He also testified that he had pain in the middle of his back, as well as in his shoulders. Elias claimed that he had difficulty sleeping, and that the Vicodin made him feel "half dead." He was able to dress himself, although his day often consisted of "wandering around" as he lacked concentration. Elias would sometimes go with a friend to "visit people or go to church." He did not perform housework, nor did he shop. Elias further stated that he could not sit and stand for prolonged periods, and that he did not walk much. As such, Elias submits that he was entitled to disability benefits from December 31, 1993 through July 23, 1996, the period between the date Elias alleges he became disabled and the date of the ALJ's decision.

## D. The ALJ's Decision

On July 23, 1996, the ALJ issued a written decision denying Elias' application for benefits, concluding that "the claimant was not under a disability as defined in the [Social Security] Act at any time throughout the date of this decision." The ALJ found that Elias was able to perform light work. Specifically, the ALJ held that "the claimant is severely impaired by cervical and lumbar myofascial syndromes but, retains a residual functional capacity compatible with the performance of light work...." The ALJ also held that "the claimant is not disabled within the framework of Rule 202.14 of Table No. 2, Appendix 2, Subpart P, Part 404 of the Regulations," as it "mandates a finding of not disabled for a high school graduate, who is closely approaching advanced age, despite

a lack of transferable work skills." In addition, the ALJ noted Elias' subjective symptomatology, but concluded that because they "are largely unsubstantiated by the medical evidence, such symptomatology cannot be characterized as debilitating."

Elias appealed, and on October 9, 1997, the Appeals Council denied his request for review pursuant to 20 C.F.R. section 404.970. The central issue before this Court, therefore, is whether the Commissioner's decision, affirmed by the ALJ and the Appeals Council, that Elias was not disabled between December 31, 1993 and July 23, 1996, is supported by substantial evidence. In addition, the Court will consider whether the ALJ erred by not requesting the presence of a vocational expert to determine whether the plaintiff could perform light work and, whether the plaintiff received a fair hearing as he appeared before the ALJ without the benefit of counsel.

## II. DISCUSSION

### A. *Standard for Rule 12(c) Motion for Judgment on the Pleadings*

Under Rule 12(c) of the Fed.R.Civ.P. the Court must apply the same standard of review as applicable to a motion to dismiss under Rule 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *S.O. Textiles v. A & E Products Group,* 18 F.Supp.2d 232, 238 (E.D.N.Y.1998). Under this test "the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard,* 18 F.3d at 150 (quoting *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 [2d Cir.1987] ) (citations omitted).

### B. *Scope of District Court's Review of ALJ's Findings*

Judicial Review of an ALJ's ruling denying Social Security benefits is limited. *Yancey v. Apfel,* 145 F.3d 106, 111 (2d Cir.1998). In examining the ALJ's decision "it is not the [Court's] function to determine de novo whether the [plaintiff] is disabled". *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (quoting *Pratts v. Chater,* 94 F.3d 34, 37 [2d Cir.1996] ) (internal quotation marks omitted). Rather, the district court must "review the Commissioner's decisions to determine whether they are supported by substantial evidence." *Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir.1999) (citing 42 U.S.C. § 405[g] [1994]; *Rivera v. Sullivan,* 923 F.2d 964, 967 [2d Cir.1991] ). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Snell,* 177 F.3d at 132 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 [1971] ). Substantial evidence is more than a mere scintilla. *Schaal,* 134 F.3d at 501 (quoting *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 [1971] ) (citations omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the findings are supported by adequate evidence "the Court should not substitute its judgment for that of the Commissioner." *Yancey,* 145 F.3d at 111; *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). The determinations of the Commissioner will be conclusive if supported by substantial evidence and where there is no legal error. 42 U.S.C. § 405(g); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *Smith v. Shalala,* 856 F.Supp. 118, 121 (E.D.N.Y.1994). Finally, the ALJ has an affirmative obligation to develop the administrative record even when the claimant is represented by counsel. *Schaal,* 134 F.3d at 505.

### C. Right to Counsel and a Full and Fair Hearing

■ Prior to determining if the Commissioner's decision is supported by substantial evidence, the Court must ascertain whether Elias received a full and fair hearing. *See Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990); *Rivera v. Chater,* 942 F.Supp. 178, 183 (S.D.N.Y.1996). A claimant is entitled to be represented by counsel at a disability hearing, and the ALJ must ensure that the claimant is aware of that fundamental right. *See* 20 C.F.R. § 404.916(b)(2); *Robinson v. Secretary of Health and Human Servs.,* 733 F.2d 255, 257 (2d Cir.1984). The Court finds that the ALJ adequately informed Elias of his right to representation. At the hearing, the ALJ asked Elias, "You're here ... without an attorney or representative ... I assume ... that you wish to represent yourself?" Elias responded, "Yes." *See Rivera,* 942 F.Supp. at 183 (claimant acknowledged at the hearing that she wished to proceed without counsel).

■ Further, in a *pro se* case, the ALJ has a heightened duty to affirmatively develop the record to ensure that the claimant's rights are adequately protected. *See Cruz,* 912 F.2d at 11; *Rivera,* 942 F.Supp. at 183. Unlike the situation in *Echevarria v. Secretary of Health and Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982), where the ALJ failed to adequately explore the nature and extent of the claimant's subjective symptoms, and unlike the facts in *Rivera,* 942 F.Supp. at 184, where the ALJ failed to inquire into the scope of the activities in which the claimant currently engaged, in the instant case the ALJ fulfilled his duty to carefully and conscientiously probe and explore all the relevant facts. During the hearing, the ALJ asked Elias about his work as a cab driver, the nature of his impairments, his symptoms, his treatment, as well as his daily activities and routine. Without the benefit of counsel, Elias nonetheless received a full and fair hearing.

### D. Qualifying for Social Security Disability Benefits Under the Social Security Act

In order to qualify for disability benefits, "an individual must be unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months.'" *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999) (quoting 42 U.S.C. § 423[d][1][A] [1994]). The claimant is disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

In evaluating a claimant's disability, the Federal Regulations provide a detailed five-step analysis that has been summarized by the Second Circuit as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to

perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir.1998) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 [2d Cir. 1982]); *see also Balsamo v. Chater,* 142 F.3d 75, 79–80 (2d Cir.1998); *Schaal,* 134 F.3d at 501.

To meet the burden of proof required by step five, the Commissioner may rely on the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the grids":

> The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the grids indicate whether the claimant can engage in any other substantial gainful work, which exists in the national economy. Generally the result listed in the grids is dispositive on the issue of disability. However, the grids are not dispositive where they do not accurately represent a claimant's limitations that significantly diminish her capacity to work.

*See Rodriguez v. Apfel,* 96 Civ. 8330, 1998 WL 150981, at *7 (S.D.N.Y. March 31, 1998) (citations omitted). There are five levels of exertions, which are derived from the grid, namely, sedentary, light, medium, heavy and very heavy. These criteria are used to determine what level of exertion a claimant is capable of performing in an occupational setting.

The Second Circuit has stated that the Commissioner must consider the following four factors when making a determination as to whether a claimant is disabled:

> (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.

*Brown,* 174 F.3d 59, 62 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1037 [2d Cir. 1983] [Per Curiam]).

In the instant case, the ALJ performed the above five-part analysis. First, the ALJ found that Elias has not been engaged in substantial gainful activity since December 31, 1993. Next, he concluded that Elias is severely impaired by cervical and lumbar myofascial pain syndromes which do not, however, meet or equal the medical criteria of a listed impairment. The ALJ then cited the findings of Dr. Lehman and Dr. Choi that Elias was incapable of performing his past work as a cab driver. However, the ALJ also held that the claimant retains a residual functional capacity compatible with the performance of light work. The ALJ noted the findings of Dr. Choi, his own treating physician, that during the course of an eight-hour workday, Elias retained the ability to sit for up to six hours, stand and/or walk for up to six hours, and lift and carry up to twenty pounds. The ALJ also reviewed the report of Dr. Dutta's consultative examination, performed at the request of the Administration on February 23, 1995 who found Elias capable of light forms of work. In that regard, Dr. Dutta's conclusion serves to independently substantiate Elias' work status. The ALJ also noted that Dr. Lehman's reports to the Workers' Compensation Board, indicating that the claimant was totally disabled, do not contradict the findings of Dr. Choi and Dr. Dutta because his reports were related only to Elias' usual employment as a cab driver.

Further, the ALJ held that Rule 202.14 of Table No. 2, Appendix 2, Subpart P, Part 404 of the Regulations, mandates a finding of "not disabled" for a high school graduate, who is closely approaching advanced employment age, with a lack of transferable work skills. Finally, the ALJ

found that Elias' subjective symptomatology was largely unsubstantiated by the medical evidence, and could not be characterized as debilitating.

Elias contends that because Dr. Lehman was Elias' treating physician, his conclusion that Elias was totally disabled should be given controlling weight. Elias also submits that the ALJ erred by not retaining a vocational expert to determine whether the plaintiff could perform light work.

It is well-settled that the expert opinion of a treating physician is entitled to great weight, *Balsamo v. Chater*, 142 F.3d 75 (2d Cir.1998), and is binding on the fact finder unless contradicted by substantial evidence. *Id.; see also Murdaugh v. Secretary of Dep't of Health and Human Servs.*, 837 F.2d 99 (2d Cir.1988). The Second Circuit has recently stated that:

> [t]he method by which the Social Security Administration is supposed to weigh medical opinions is set forth at 20 C.F.R. § 404.1527(d). The regulations say that a treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record."

*Snell*, 177 F.3d at 133 (quoting 20 C.F.R. § 404.1527[d][2]). In addition, the Code of Federal Regulations mandates that greater weight be given to the treating sources because they are most able to provide a detailed picture of medical impairments and bring a unique perspective to the medical evidence. 20 C.F.R. § 404.1527(d)(2). The Second Circuit in *Snell* added that:

> [w]hen other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given. Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and can-

not work—are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.

*Snell*, 177 F.3d at 132 (quotations omitted).

While the Court acknowledges that a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record," *Snell*, at 133 (quoting 20 C.F.R. § 404.1527[d][2]), the Court is mindful that "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Id.*

The Court again emphasizes that Dr. Jennifer Choi, a treating physician of the plaintiff, stated that in her opinion, Elias could perform light work, could lift and carry twenty pounds, could stand and/or walk, and sit up to six hours a day.

With regard to Dr. Lehman's finding that Elias was "totally disabled," the Court concludes that the ALJ correctly held that Dr. Lehman's finding was not determinative and was contradicted by substantial evidence. In fact, with reasonable certainty, Dr. Lehman's opinion was not really relevant on the issue of whether Elias was entitled to disability benefits, as it was submitted to a Workers' Compensation Board for the purpose of determining whether Elias could continue his **present** employment as a cab driver. Dr. Lehman's conclusion did not determine or analyze or even consider whether Elias retained the residual functional capacity to perform light work.

With regard to the final issue, "the mere existence of a nonexertional im-

pairment does not automatically require the production of a vocational expert." *See Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir.1986). Rather, the testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *See id.* Elias' nonexertional impairments included a lack of concentration, difficulty sleeping, and depression. The ALJ specifically noted that these symptoms are not of sufficient severity, frequency, and duration so as to cause disability and significantly diminish Elias' ability to perform light work, the category into which he would otherwise have been placed. As such, the production of a vocational expert was not required, and therefore, the ALJ did not err in failing to request the presence of a vocational expert to determine whether the plaintiff could perform light work.

In sum, the Court finds that the ALJ's findings and conclusion that Elias retained the residual functional capacity to perform light work between December 31, 1993 and July 23, 1996 was supported by substantial evidence and was determined without legal error. Further, Elias received a full and fair hearing even though he appeared *pro se,* and the testimony of a vocational expert was not required.

### III. CONCLUSION

Having reviewed the submissions of the parties and the findings by the Commissioner, the ALJ, and the Appeals Council, and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **DENIED;** and it is further

**ORDERED,** that the defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **GRANTED;** and it is further

**ORDERED,** that the complaint is hereby dismissed and the Clerk of the Court is directed to close this case.

**SO ORDERED.**