Burnette **YANCEY, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security * Defendant–Appellee.**

**Docket No. 97–6103.**

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1997.

Decided May 22, 1998.

* Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. He is therefore substituted as defendant in this action pursuant to Federal Rule of Appellate Procedure 43(c)(1).

Robert S. Reger, Rolnick & Reger, Hamden, CT, for Plaintiff–Appellant.

Deirdre A. Martini, Asst. U.S. Atty., District of Connecticut, Bridgeport, CT, (Christopher F. Droney, U.S. Atty., District of Connecticut, New Haven, CT, on brief; Amy S. Knopf, Assistant Regional Counsel, Social Sec. Admin., Boston, MA, of counsel), for Defendant–Appellee.

Before: MINER and PARKER, Circuit Judges, and DEARIE, District Judge.**

MINER, Circuit Judge:

Plaintiff Burnette Yancey appeals from a judgment and order entered in the United States District Court for the District of Connecticut (Dorsey, C.J.). The order and judgment adopted the magistrate judge's recommended ruling affirming the decision of the Commissioner of Social Security that Yancey was not under a disability as defined in the Social Security Act, 42 U.S.C. § 301 *et seq.*, as amended. The district court found that the decision of the Administrative Law Judge ("ALJ") was supported by substantial evidence and that (1) the ALJ did not abuse his discretion in refusing to subpoena Yancey's treating physician to testify at the administrative hearing and (2) the ALJ did not err in failing to refer Yancey for either a psychiatric or psychological evaluation.

For the reasons that follow, we affirm.

## BACKGROUND

Plaintiff Burnette Yancey was born on July 19, 1950. Her formal education did not extend beyond the tenth grade. She has

** The Honorable Raymond J. Dearie, of the United States District Court for the Eastern District of New York, sitting by designation.

since worked as a machine operator, riveter, solderer, and machine inspector. She last worked in 1989 as an aircraft parts inspector for the Pratt & Whitney division of United Technologies Corporation. In early 1988, Yancey developed pain in her knees, wrists, hands and shoulders and experienced morning stiffness, fatigue and weight loss.

In a written opinion dated April 18, 1988, internist/ rheumatologist, Dr. Robert Schoen, stated that it was his impression that Yancey was suffering from inflammatory arthritis, "possibly systemic lupus erythematosus" ("SLE" or "lupus").[2] On March 7, 1989, Dr. Schoen diagnosed Yancey with active SLE, and, among other treatments, prescribed prednisone, an anti-inflammatory. An anti-nuclear antibodies ("ANA") sample taken on March 7, 1989, was "not definitive" of an SLE diagnosis. On April 20, 1989, Dr. Schoen added corticosteroid therapy to Yancey's treatment regimen. In June of 1989, Dr. Schoen again reported that Yancey was manifesting symptoms of active SLE.

On August 23, 1989, Yancey filed an application for disability benefits with the Social Security Administration ("SSA"), alleging an inability to work since January of 1988 as a result of rheumatoid arthritis and SLE. She thereafter was referred for a consultative examination, which was performed by Dr. Joseph Ayoub in October of 1989, at the request of the SSA. Yancey again reported pain and cramping in her extremities. Dr. Ayoub noted evidence of swelling and tenderness in Yancey's hands and feet, with a decrease in motor power and a loss of range of motion of her hands. However, X-rays taken by Dr. Ayoub revealed no abnormalities. Dr. Ayoub diagnosed lupus "by history" only, and opined that Yancey should have restrictions in carrying, lifting, handling, holding, pushing, pulling with her hands, as well as walking, standing, climbing and balancing. The SSA denied Yancey's application for benefits on November 9, 1989, based on its determination that the evidence of record did "not show any significant 100% disabling disease that would interfere in [Yancey's] ability to engage in all types of employment."

In January of 1991, Yancey was examined at the Yale University School of Medicine's Rheumatology Clinic (the "rheumatology clinic"). Yancey showed no signs of rheumatoid arthritis or SLE, but exhibited minimal tenderness in her right wrist, biceps muscle and epigastric region. On March 13, 1991, Yancey began receiving treatment from Dr. Raymond Wong and the Hill Health Center ("HHC") staff in New Haven, Connecticut. At that time, Yancey complained that her joint pain had worsened. Dr. Wong noted Dr. Schoen's prior diagnosis of SLE, but only found evidence of tenderness in Yancey's left ankle and foot and in her right elbow. Dr. Wong prescribed prednisone and ibuprofen (Motrin).

Yancey filed a second application for disability benefits on April 15, 1992, alleging an inability to work since April 18, 1989. A report prepared for the State of Connecticut Disability Determination Services dated May 8, 1992, indicated that although Yancey had "some arthralgia,"[3] she did not fit the criteria for SLE. Notes from the HHC dated June 23, 1992, presumably Dr. Wong's, contain the following statement: "I am not convinced of SLE [diagnosis]." Because Yancey reported that the prednisone helped relieve her pain, its continued use was prescribed.

In June of 1992, internist Dr. Francisco Carbone performed a consultative examination of Yancey at the request of the SSA. His examination found no evidence of wrist, digital or elbow tenderness, and no evidence of swelling. Dr. Carbone concluded that there was "no evidence of physical impairment which would restrict [Yancey] from any type of work related activities." On July 28, 1992, Yancey's second application was denied, the SSA having concluded from the evidence that Yancey was able to continue performing her work as a parts inspector. On September

---

**2.** SLE is an inflammatory connective tissue disease with variable features that often include fever, weakness, fatigue, joint pains or arthritis resembling rheumatoid arthritis, and skin lesions on the face, neck or upper extremities. *See Stedman's Medical Dictionary* 1001 (26th ed.1995).

**3.** Arthralgia is generally defined as joint pain. *Dorland's Medical Dictionary* 140 (28th ed.1994).

10, 1992, Yancey filed a request for reconsideration.

Notes from the HHC dated September 21, 1992 indicate a history of SLE, but also indicate that Yancey manifested no symptoms of SLE other than arthralgia. On November 3, 1992, Dr. Wong completed a questionnaire for the State of Connecticut Disability Determination Services regarding Yancey's condition. He noted the presence of "multiple arthralgia" and indicated that Yancey had a history of SLE, "apparently diagnosed by Dr. Robert Schoen."

On December 23, 1992, the SSA again determined that Yancey was not disabled and was capable of returning to work. Yancey filed a request for an administrative hearing on March 3, 1993. On July 16, 1993, a hearing was held before an ALJ. The ALJ issued a written decision on October 26, 1993, in which he denied Yancey's requests to subpoena Dr. Wong and to have a consultative examination of Yancey performed by another rheumatologist. The ALJ also made the following determination:

> The medical evidence establishes the claimant has been diagnosed in the past as subject to [SLE] with arthralgia and arthritis.... However, other physicians have questioned this diagnosis..... Her impairments, individually or in combination, do not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 [that would entitle her to disability benefits].

The ALJ determined that Yancey retained at least the capacity to perform sedentary work.[4] In so doing, the ALJ found Yancey's testimony of severe pain and concomitant functional limitations not to be fully credible in light of the contradictory information provided by Dr. Carbone and Dr. Wong. The ALJ then considered Yancey's vocational profile (age, education, past work experience and residual functional capacity) and determined that Yancey was not "disabled" as defined in the Social Security Act.[5]

Yancey timely submitted an application requesting review of the decision by the SSA Appeals Council ("Appeals Council"). Attached to the application was a letter from Yancey's attorney in which it was argued that because SLE is difficult to detect, Yancey was entitled to have the case remanded with an order for a subpoena either requiring a narrative report from Dr. Wong or requiring Dr. Wong to testify regarding his medical reports. Yancey's attorney also argued that Yancey was entitled to an additional consultative examination by a rheumatologist.

In January of 1994, Yancey again visited the rheumatology clinic, where it was determined that though there was evidence of some muscle tenderness, all joints showed full range of motion without inflammation. Radiological studies were normal. When Yancey was again examined at the rheumatology clinic in March of 1994, all of her joints were determined to be normal. At that time, Yancey was also tapering her use of prednisone successfully. Dr. Christina Brunet, of the rheumatology clinic explained that "[d]uring the time that [Yancey] has attended the Yale clinic she has not demonstrated any clinical signs of active arthritis or lupus."

In an order dated March 4, 1994, the Appeals Council remanded the case to "[f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. § 404.1529) and Social Security Ruling 88–13."[6]

---

4. According to 20 C.F.R. § 404.1567, sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles such as files, ledgers and small tools.

5. "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).

6. 20 C.F.R. § 404.1529 and Social Security Ruling 88–13 require an ALJ to consider a number of factors when evaluating subjective complaints such as pain. The Appeals Council ordered the ALJ specifically to address seven factors, including the possible existence of a medically determinable mental impairment.

In response to Yancey's attorney's requests, Dr. Wong forwarded to the attorney a letter dated June 2, 1994, in which he stated:

Ms. Yancey as far as I know does not have active [SLE]. She has arthralgia which is joint pain but I have not documented any signs of arthritis or joint inflammation. Multiple [X-r]ay and scans have not confirmed the presence of arthritis. Because of the lack of objective findings she has been referred to the rheumatology clinic at Yale New Haven Hospital.

Unsatisfied with this letter, Yancey's attorney again requested that the ALJ issue a subpoena for Dr. Wong to appear at the second administrative hearing.

In accordance with the Appeals Council order, a second administrative hearing was held on May 23, 1994. After the hearing, the ALJ issued his written decision dated July 28, 1994. In the decision he denied the request to subpoena Dr. Wong. The ALJ reasoned that the letter from Dr. Wong, together with the other evidence, was "fully adequate to adjudicate [the] case." The ALJ went on to address Yancey's subjective complaints as well as the medical evidence and concluded:

Apparently in light of her ongoing complaints of pain, treatment was administered for [muscle and] low back pain, but the medical evidence does not show the existence of a medically determinable impairment that could reasonably be expected to produce the degree of pain alleged by the claimant.

The ALJ finally concluded that Yancey did not have an impairment or combination of impairments as listed in, or medically equivalent to one listed in, the SSA's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and was "not entitled to a period of disability or disability benefits under Sections 216(i) and 223, respectively of the Social Security Act."

On August 24, 1994, Yancey requested that the Appeals Council review the ALJ's second decision. In support of this request, Yancey's attorney again submitted a letter in which he argued that the ALJ did not satisfactorily inquire into Yancey's subjective complaints and that Yancey was denied her "right to subpoena [a] witness, even one who has submitted a written report" Yancey's attorney also argued that the Appeals Council order instructed the ALJ to explore, *inter alia*, the possibility of a medically determinable psychological impairment but that no examination by a clinical psychologist was conducted or ordered by the ALJ. Yancey's attorney requested that the matter again be remanded with an order to the ALJ to issue the subpoena and direct that Yancey be examined by a clinical psychologist. On October 12, 1994, the Appeals Council issued an order denying Yancey's request for review, concluding that there was no basis to grant review and that the ALJ's determination was supported by substantial evidence. The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C. § 405(g).

Yancey timely filed suit in the United States District Court for the District of Connecticut on December 8, 1994, and subsequently sought to have the case remanded for rehearing pursuant to 42 U.S.C. § 405(g). In March of 1997, Magistrate Judge, Holly B. Fitzsimmons, recommended that the ALJ's decision be affirmed. The magistrate judge found that because the ALJ's decision was supported by substantial evidence, the ALJ did not abuse his discretion under 20 C.F.R. § 404.950(d)(1) when he denied Yancey's request to subpoena Dr. Wong. The magistrate judge also found that Yancey had waived any right to subpoena Dr. Wong because she failed to file a written request for the subpoena five days prior to the hearing date, as required by 20 C.F.R. § 404.950(d)(2). Finally, the magistrate judge noted that Yancey bore the burden of demonstrating that she suffered from a mental impairment and that Yancey's oral representation to the ALJ that she was told by one physician that her problems were "in her head" did not require the ALJ to solicit additional evidence of a mental impairment.

The district court adopted the magistrate judge's recommendation, but noted that Yancey may have satisfied the written request

requirement of § 404.950(d)(2).[7] The district court entered judgment on April 2, 1997, dismissing Yancey's case and this appeal followed.

## DISCUSSION

### I. Standard of Review

■ Appellate review of the Commissioner's decision is limited. "On review, we may only set aside a determination which is based upon legal error or not supported by substantial evidence." *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence "is more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation and citation omitted); *see also Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner. *See Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988).

### II. Right to Subpoena a Reporting Physician

Yancey argues that because diagnosing SLE is difficult and there is contradictory medical evidence in this case, "the Fifth Amendment of the Constitution and notions of fundamental fairness" compel the issuance of a subpoena requiring Dr. Wong to testify so as to allow Yancey to cross-examine him concerning his medical findings. The specific issue of whether a disability claimant has an absolute right to have a reporting physician subpoenaed appears to be one of first impression in this Circuit. *But see Townley v. Heckler,* 748 F.2d 109, 114 (2d Cir.1984) (ALJ violated claimant's right to due process by basing his decision on evidence that the claimant was not allowed to challenge or rebut); *Treadwell v. Schweiker,* 698 F.2d 137, 143–44 (2d Cir.1983) (ALJ's reliance on uncorroborated hearsay testimony and failure to enforce subpoenas constituted a denial of due process); *Gullo v. Califano,* 609 F.2d

649, 650 (2d Cir.1979) (ALJ's reliance on a post-hearing report without giving the claimant an opportunity to examine or challenge that report constituted a violation of due process).

■ For the following reasons, we hold that the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a claimant makes such a request.

The issuance of subpoenas in social security administrative proceedings is governed primarily by 20 C.F.R. § 404.950(d)(1), which provides, in pertinent part, as follows:

> When it is *reasonably necessary for the full presentation of a case,* an administrative law judge or a member of the Appeals Council *may,* ... at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at a hearing.

(emphasis added). The plain language of this section clearly places the decision to issue a subpoena within the sound discretion of the ALJ. *See also Wallace v. Bowen,* 869 F.2d 187, 194 (3d Cir.1988) ("The question of whether to issue a subpoena to compel cross-examination of a reporting physician is a question entrusted to the ALJ who is obligated to develop the record fully." (quotation omitted)).

Yancey acknowledges that the ALJ generally has discretion in deciding whether to issue a subpoena, but contends that the claimant has an absolute due process right to subpoena a reporting physician whenever the claimant seeks to cross-examine that physician. Yancey relies on the Supreme Court case of *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and cases from other circuits that see *Perales* as supportive of such an absolute right. *See Lidy v. Sullivan,* 911 F.2d 1075 (5th Cir. 1990); *Coffin v. Sullivan,* 895 F.2d 1206 (8th Cir.1990).

The government counters by arguing that we should accept the reasoning of *Flatford v.*

---

**7.** This issue was not raised on appeal.

*Chater*, 93 F.3d 1296 (6th Cir.1996). Citing certain pragmatic factors, the case of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as well as the *Perales* case, the *Flatford* court held that due process does not require an ALJ to subpoena a reporting physician whenever a claimant so requests. The court reasoned that the issuance of subpoenas should be left to the sound discretion of the ALJ, who is charged with the obligation to develop the record fully. *See Flatford*, 93 F.3d at 1307.

In *Perales*, the Supreme Court addressed the question of what process was due with regard to the use of physician's reports in a social security disability hearing. *See* 402 U.S. at 389–408, 91 S.Ct. 1420. Generally, due process requires that a social security disability hearing must be full and fair. *See id.* at 401–02, 91 S.Ct. 1420. The *Perales* Court noted that, "in one sense," there is a property right to a claim to social security benefits and went on to state that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* at 402–03, 91 S.Ct. 1420 (citation and quotation omitted).

The *Perales* Court held that a written report prepared by a physician who had examined the claimant may be received as evidence in a disability hearing,

> and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination.

*Id.* at 402, 91 S.Ct. 1420. Although the Court mentioned the "right to subpoena," it never specifically addressed whether this "right" was limited or absolute. The *Perales*

Court indirectly acknowledged the ALJ's discretion in these matters by noting that the admission of consultative physicians' reports did not threaten the integrity or fairness of the administrative proceeding in light of the fact that such reports are subject to "cross-examination as may be required for a full and true disclosure of the facts." *Id.* at 410, 91 S.Ct. 1420.

As noted above, some circuits have relied on *Perales* as a basis for holding that when a claimant requests that a reporting physician be subpoenaed to testify, that claimant enjoys an absolute due process right to have the subpoena issued. *See Lidy*, 911 F.2d at 1077 (holding that a claimant requesting that a reporting physician be subpoenaed has an absolute due process right to cross-examine such physician); *Coffin*, 895 F.2d at 1212 (holding that "due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports").

In contrast, after reviewing *Perales* and analyzing the requirements of procedural due process within the framework set forth in *Eldridge*, the Sixth Circuit recently held that due process does not require the Commissioner to issue a subpoena and allow a claimant to cross-examine a reporting physician upon request. *See Flatford*, 93 F.3d at 1305.

*Flatford* involved a disability claimant who was deemed to have retained the ability to perform sedentary work and therefore was denied disability benefits. *See* 93 F.3d at 1299. Prior to this determination, Flatford had submitted interrogatories to a reporting physician and, after receiving the physician's answers, requested that the physician be subpoenaed for cross-examination. The ALJ denied the request pursuant to 20 C.F.R. § 404.950(d)(1) after finding that the record was fully developed. *See id.* Flatford appealed the denial of the subpoena to the Sixth Circuit, arguing that a claimant "has an absolute due process right to subpoena and cross-examine a medical advisor." *Id.*

In resolving this question, the Sixth Circuit applied the analytical framework from *Eldridge*.[8] The court noted that the private

---

**8.** In *Eldridge,* the Supreme Court specifically dealt with due process considerations in a benefit

interests involved in a disability case are the claimant's interest in a meaningful opportunity to present his case and a fair determination of whether he was qualified for disability benefits. See id. at 1306. Citing the non-adversarial nature of administrative adjudications, the court noted that the need to allow for cross-examination of every reporting physician is less crucial to the fairness and accuracy of the ALJ's decision than it would be in an adversarial context. See id. The court also found that the danger of inaccurate medical information or biased opinions was not so great as to cause concern that the claimant might erroneously be denied benefits if not given the opportunity to cross-examine the answering physician. See id. Finally, the court considered the burdensome effects of the costs of paying reporting physicians to testify in every case, as well as the likely decline in physicians willing to provide reports with the knowledge that a subpoena would follow virtually every report submitted. See id.

The *Flatford* court concluded that the requirements of due process are satisfied by providing a claimant with the opportunity to cross-examine a reporting physician "where reasonably necessary to a full development of the evidence in the case." Id. at 1307; see also *Wallace*, 869 F.2d at 191 (holding that an ALJ must afford a claimant an opportunity to cross-examine the authors of any post-hearing medical reports where such cross-examination is necessary to the full presentation of the case); 20 C.F.R. § 404.950(d)(1). Recognizing that the issuance of a subpoena was a matter committed to the discretion of the ALJ, the Sixth Circuit went on to examine whether the ALJ abused his discretion in Flatford's case, and concluded that he had not. *Flatford*, 93 F.3d at 1307.

■ We agree with the rule adopted by the Sixth Circuit. Applying that rule to the case before us, we find no abuse of discretion

by the ALJ. The ALJ (1) allowed Yancey a fair and meaningful opportunity to present her case and (2) had no indication that Dr. Wong's (or any physician's) reports were inaccurate or biased or that subpoenaing Dr. Wong would have added anything of value to the proceedings. Yancey was given ample opportunity to submit medical evidence to support her claim of disability. Indeed, Yancey submitted records from her first physician, Dr. Schoen, as well as from subsequent treating physicians, including Dr. Wong.

The ALJ provided an opportunity for Yancey to obtain and submit a final written report from Dr. Wong prior to the second administrative hearing. Dr. Wong replied to the request for this report and stated that, given the lack of objective symptoms, he did not believe Yancey suffered from SLE. The denial of Yancey's request to subpoena Dr. Wong did not threaten the fairness and accuracy of the ALJ's decision, which was expressly based on the entire record, including all of Dr. Wong's consistent reports. Significantly, Dr. Wong never diagnosed Yancey as having SLE and consistently found a lack of objective evidence to support such a finding. Dr. Wong's testimony therefore would have provided only redundant information and would not have aided the ALJ in making his determination.

Moreover, we agree that practical concerns strongly militate against adopting a rule establishing an absolute right to subpoena reporting physicians. We are particularly concerned that to accept, as a matter of law, that a disability claimant has an absolute right to subpoena a reporting physician would unnecessarily increase the financial and administrative burdens of processing disability claims while diluting the ALJ's discretion in how he develops the record.

In Yancey's case, the ALJ appropriately compiled the record, considered all the evi-

termination circumstance, but provided a general framework for analysis. The Supreme Court instructed that three factors need to be considered when determining whether an administrative procedure is constitutionally sufficient:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893.

dence and determined that the record was fully adequate to adjudicate the case and that there was no need to subpoena Dr. Wong. The ALJ had before him medical reports from numerous sources, including Dr. Schoen, who had first diagnosed SLE in 1989, as well as two physicians who, along with Dr. Wong, subsequently examined Yancey and opined that she did not suffer from disabling SLE or arthritis. After weighing the evidence, the ALJ found that although Yancey suffered from multiple pains and fatigue, she did not have an impairment or combination of impairments listed in the pertinent regulations. Under these circumstances, we believe that there was no deprivation of due process as the ALJ acted well within his discretion by refusing to subpoena Dr. Wong.

### III. Psychiatric Evaluation

 Yancey contends that the decision of the Appeals Council to remand the ALJ's first decision with directions to consider the possibility that Yancey suffered from a medically determinable mental impairment required that the ALJ order a consultative psychiatric or psychological examination. Yancey argues that the ALJ neglected his duty to investigate and fully develop the record by failing to order a consultative examination in this circumstance. This argument is without merit.

20 C.F.R. § 404.1512 explicitly places the burden of supplying all relevant medical evidence on the claimant. Yancey provided no evidence of a psychiatric or psychological impairment, and offers no legal basis for her argument that such an examination was either required or necessary. In accordance with the Appeals Council's order, at the second hearing the ALJ questioned Yancey about the possibility of a mental impairment. The only indication of a "mental impairment" was Yancey's testimony that one doctor allegedly informed her that her problems were "in her head." Notably, the physicians of record neither suggested the existence of a mental impairment nor recommended that Yancey undergo a psychological or psychiatric evaluation. Significantly, Dr. Ayoub described Yancey as being pleasant and coher-

ent. Likewise, Dr. Carbone stated that Yancey appeared healthy, alert and oriented at all times. We believe that after the remand order, the ALJ properly and fully developed the record and in so doing, sufficiently considered the possibility of Yancey's suffering from a medically determinable mental impairment.

### IV. Substantial Evidence

 It is clear from the foregoing that the administrative decision in this case rests on adequate findings clearly supported in the record. The record reveals no basis for a determination that substantial evidence is lacking.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.